Statement of ALITO, J.

# SUPREME COURT OF THE UNITED STATES

## CHARLES G. MOORE, ET UX. *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–800.　Decided September 8, 2023

The motion of petitioners to dispense with printing the joint appendix is granted.

Statement of JUSTICE ALITO.

In a letter to THE CHIEF JUSTICE dated August 3, 2023, Senator Richard Durbin, the Chair of the Senate Judiciary Committee, "urge[d]" THE CHIEF JUSTICE "to take appropriate steps to ensure" that I recuse in this case.[1]  Recusal is a personal decision for each Justice, and when there is no sound reason for a Justice to recuse, the Justice has a duty to sit.[2]  Because this case is scheduled to be heard soon, and because of the attention my planned participation in this case has already received, I respond to these concerns now.

There is no valid reason for my recusal in this case.  Senator Durbin's letter expressed the view that recusal is necessary because I participated in two interviews that resulted in two articles about my work that appeared in the Wall Street Journal.  The interviews were jointly conducted, and the resulting articles were jointly written, by James Taranto and David B. Rivkin, Jr.  Mr. Taranto, a prominent journalist, presumably either wrote or approved everything that appeared in the articles under his byline, and Senator Durbin's letter makes no objection relating to his participation in this project.  Senator Durbin argues, however, that Mr. Rivkin's participation requires me to recuse because Mr. Rivkin, who is both a much-published

——————

[1] Letter from R. Durbin to J. Roberts (Aug. 3, 2023).

[2] See attachment to letter from THE CHIEF JUSTICE to R. Durbin (Apr. 25, 2023).

opinion-journalist[3] and a practicing attorney, is one of the attorneys in this case.

This argument is unsound. When Mr. Rivkin participated in the interviews and co-authored the articles, he did so as a journalist, not an advocate. The case in which he is involved was never mentioned; nor did we discuss any issue in that case either directly or indirectly. His involvement in the case was disclosed in the second article, and therefore readers could take that into account.

There was nothing out of the ordinary about the interviews in question. Over the years, many Justices have participated in interviews with representatives of media entities that have frequently been parties in cases before the Court, including NPR,[4] the New York Times,[5] CBS,[6] Fox

---

[3] Mr. Rivkin has published hundreds of articles, op-eds, and book reviews on a wide variety of subjects in newspapers and magazines, including the Wall Street Journal, the Washington Post, the New York Times, USA Today, and the Los Angeles Times.

[4] Justices Breyer and SOTOMAYOR have interviewed with NPR and did not recuse from a case in which NPR was respondent. See *Yeager* v. *National Pub. Radio*, No. 19–6442; A. Chang, Justice Stephen Breyer on What the Court Does Behind Closed Doors, and Hamilton, NPR (Dec. 13, 2015); N. Totenberg, A Justice Deliberates: Sotomayor on Love, Health and Family, NPR (Jan. 12, 2013).

[5] JUSTICE SOTOMAYOR has interviewed with a journalist for the New York Times and did not recuse in a case in which the Times was a party. See *Brimelow* v. *The New York Times Co.*, No. 21–1030; Justice S. Sotomayor & L. Greenhouse, A Conversation with Justice Sotomayor, 123 Yale L. J. Forum 375 (2014).

[6] Justices Breyer and SOTOMAYOR interviewed with CBS News and did not recuse in cases in which CBS News was a party. See *Personal Audio, LLC* v. *CBS Corp.*, No. 20–260; *Vernon* v. *CBS Television Studios*, No. 19–5161; *Den Hollander* v. *CBS News Inc.*, No. 17–1452; *Moline* v. *CBS News Inc.*, No. 14–9173; CBS News, Justice Sotomayor Prefers "Sonia from the Bronx" (Jan. 29, 2013); CBS News, Q&A: Justice Stephen Breyer (Sept. 13, 2015).

News,[7] National Review,[8] and ABC.[9] Similarly, many of my colleagues have been interviewed by attorneys who have also practiced in this Court,[10] and some have co-authored books with such attorneys.[11] Those interviews did not result in or require recusal.

Senator Durbin's request for my recusal is presumably based on the theory that my vote in *Moore* will be affected in some way by the content of the articles that resulted from the interviews, but that theory fundamentally misunderstands the circumstances under which Supreme Court Justices must work. We have no control over the attorneys whom parties select to represent them, and as a result, we are often presented with cases in which one of the attorneys has spoken favorably or unfavorably about our work or

———————

[7] JUSTICE GORSUCH interviewed with Fox News and did not recuse in a case in which Fox News was a party. See *Bralich* v. *Fox News Network, LLC*, No. 21–7528; Fox News, Justice Neil Gorsuch in "Fox & Friends" Interview: Pay Attention to "Separation of Powers" (Dec. 17, 2019).

[8] JUSTICE GORSUCH has interviewed with National Review and did not recuse in a case in which National Review was petitioner. See *National Review, Inc.* v. *Mann*, No. 18–1451; C. Cooke, A Conversation with Justice Neil Gorsuch, Nat. Rev. (Oct. 10, 2019).

[9] CHIEF JUSTICE ROBERTS interviewed with ABC and did not recuse in a case in which ABC was petitioner. See *American Broad. Cos., Inc.* v. *Aereo, Inc.*, No. 13–461; ABC News, Interview with Chief Justice Roberts (Nov. 13, 2006).

[10] For instance, Bryan Garner has interviewed several Justices, and he argued a case three Terms ago. See LawProse with Bryan A. Garner, YouTube, https://www.youtube.com/@lawprosewithbryana.garner6732; T. Mauro, How Grammar Guru Bryan Garner Made His Way to the Supreme Court, Nat. L. J. (Dec. 11, 2020); *Facebook, Inc.* v. *Duguid*, No. 19–511.

[11] See*, e.g.*, R. Ginsburg & A. Tyler, Justice, Justice Thou Shalt Pursue: A Life's Work Fighting for a More Perfect Union (2021); Brief for Federal Courts Scholars as *Amici Curiae* in *McDonough* v. *Smith*, O. T. 2018, No. 18–485; N. Gorsuch, A Republic, If You Can Keep It (2019) (with J. Nitze & D. Feder); Brief for The Rutherford Institute as *Amicus Curiae* in *Sorenson* v. *Massachusetts*, O. T. 2020, No. 20–1747 (signed by D. Feder).

character. Similarly, we regularly receive briefs filed by or on behalf of Members of Congress who have either supported or opposed our confirmations, or who have made either favorable or unfavorable comments about us or our work.[12] We participate in cases in which one or more of the attorneys is a former law clerk, a former colleague, or an individual with whom we have long been acquainted. If we recused in such cases, we would regularly have less than a full bench, and the Court's work would be substantially disrupted and distorted.

In all the instances mentioned above, we are required to put favorable or unfavorable comments and any personal connections with an attorney out of our minds and judge the cases based solely on the law and the facts. And that is what we do.

For these reasons, there is no sound reason for my recusal in this case, and in accordance with the duty to sit, I decline to recuse.

---

[12] See, *e.g.*, Brief for Appellees in *FEC v. Ted Cruz for Senate*, O. T. 2021, No. 21–12; Brief on Jurisdiction for Respondent The Bipartisan Legal Advisory Group of the U. S. House of Representatives in *United States v. Windsor*, O. T. 2012, No. 12–307; Brief for Current and Former Members of Congress as *Amici Curiae* in *CFPB* v. *Community Fin. Servs. Assn. of Am.*, O. T. 2022, No. 22–448; Brief for Current Members of the United States Congress as *Amici Curiae* in *Mountain Valley Pipeline, LLC* v. *The Wilderness Soc.*, O. T. 2023, No. 23A35; Brief for Members of the United States Senate et al. as *Amici Curiae* in *Groff* v. *DeJoy*, O. T. 2022, No. 22–174; Brief for 228 Members of Congress as *Amici Curiae* and Brief for 236 Members of Congress as *Amici Curiae* in *Dobbs* v. *Jackson Women's Health Org.*, O. T. 2019, No. 19–1392.